UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JUSTIN JAMES EUGENE CLARK,

    Plaintiff,

    v.                                                                              CAUSE NO. 3:22-CV-522-DRL-MGG

WARDEN,

    Defendant.

OPINION AND ORDER

Justin James Eugene Clark, a prisoner without a lawyer, is proceeding in this case "against the Westville Correctional Facility Warden in an official capacity to obtain permanent injunctive relief to provide him with constitutionally adequate treatment for severe mental health problems and suicidal ideations as required by the Eighth Amendment[.]" ECF 6 at 6. The Warden was ordered to respond to the preliminary injunction motion "with supporting medical documentation and declarations from other staff as necessary, describing what care the plaintiff is receiving to address his allegedly severe mental health problems and suicidal ideations." *Id.* The Warden filed a response which includes his declaration, 702 pages[1] of Mr. Clark's medical records from June 2021 to July 2022, and 62 pages of health care request forms from the same period. ECF 17.

Only the preliminary injunction motion is before the court at this time, but both the preliminary and permanent injunction turn on two related, but distinct, questions: Is

---

[1] The page Bates stamped EXHIBIT B351 was filed at both ECF 17-2 at 351 and ECF 17-3 at 1.

Mr. Clark receiving constitutionally adequate treatment for his alleged severe mental health problems? Is Mr. Clark receiving constitutionally adequate treatment for his alleged suicidal ideations? Based on the briefing provided by the parties, the court finds Mr. Clark has not carried his burden of showing preliminary injunctive relief is appropriate for his mental health problems, but he has demonstrated preliminary injunctive relief is appropriate for his suicidal ideations.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). Here, the uncontradicted evidence is Mr. Clark's Mental Status Classification is "Free of mental illness." ECF 17-3 at 61. He has been seen fourteen times in the past seven months by mental health professionals. ECF 17-1 at 2-3. He was most recently seen on July 28, 2022, when a mental health provider concluded "A referral to psychiatry is not clinically indicated at this time." ECF 17-4 at 1.

Mr. Clark argues he has "P.T.S.D., Bipolar, and Anxiety, and hearing voices," but has been "misdiagnosed." ECF 1 at 5. He asserts he needs treatment in the form of medication, therapy, evaluations, testing, and transfer to a mental health unit at a different prison. ECF 7 at 9. He provides no evidence other than his own statement that he currently has mental health problems severe enough to warrant treatment beyond what he is currently receiving. Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Mr. Clark is being routinely seen and evaluated by mental health providers. He has not made a clear showing that he is likely to succeed on the merits of the claim that he is not receiving constitutionally adequate treatment for his mental health.

The same cannot be said about his suicidal ideations. Mr. Clark says he has a razor blade and a rope. ECF 7 at 4 and 7. The Warden declares "Clark does not have any razors or rope in his cell." ECF 17-1 at ¶ 6. Mr. Clark says he has not been searched and he does have them. ECF 21 at 6. Even if he has neither, he says he is suicidal. ECF 7 at 2. The Warden's declaration makes no statement about how Mr. Clark's suicide threats are being addressed. *See* ECF 17-1. Mr. Clark says he was not placed on suicide watch. ECF 21 at 6. In his brief, the Warden argues mental health providers found Mr. Clark did not have suicidal ideations on November 23, 2021; February 4, 2022; April 27, 2022; May 25, 2022; June 14, 2022; June 21, 2022; and July 1, 2022. ECF 17 at 5-7. That may be true, but on July 5, 2022, he signed the complaint for this case writing he had "a strong urge to kill myself . . .." ECF 7 at 4. On July 25, 2022, wrote he was on a hunger strike. ECF 13 at 1.

3

On August 9, 2022, he filed his reply brief asserting he "feel like hanging myself from the vent in my cell . . .." ECF 21 at 5.

On July 12, 2022, Mr. Clark wrote in a Request for Health Care, "you all want me to kill myself so I'm going to give you what you want . . .." ECF 17-4 at 11. In response he was told "Seen on 07/01/2022 by MHP Quinn." *Id*. It is possible Mr. Clark is lying about being suicidal. If there was evidence he was evaluated by medical professionals who determined in their professional judgment that he was not serious about killing himself, a preliminary injunction might not be warranted. That is not the record before the court in this case. In this record, the Warden has not identified anything showing Mr. Clark's suicidal ideations have been considered since July 1, 2022. Even then, the consideration was merely the absence of a notation about suicide. *See* ECF 17-3 at 343-44. There is no indication medical professionals have determined his current suicidal ideations are insincere.

"The risk of suicide is a grave one, 'not one that today's society chooses to tolerate.'" *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021) *quoting Helling v. McKinney*, 509 U.S. 25, 36 (1993). Mr. Clark has not demonstrated he will definitely win, but he has made a strong showing that he could obtain a permanent injunction requiring his suicidal ideation be seriously addressed by mental health professionals.

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

4

such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Though Mr. Clark may not be serious about attempting suicide, if he is, he could sustain serious injuries or death.

As to the third prong, the balance of equities tips in Mr. Clark's favor because under the Eighth Amendment, prison officials have an obligation to prevent inmates from committing suicide when they have actual knowledge of a serious risk. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557 (7th Cir. 2021). Even a narrowly tailored preliminary injunction admittedly imposes a burden on the Warden, but it is less of an imposition than having Mr. Clark contemplate suicide without supervision.

As to the fourth prong, an injunction is in the public interest because the public expects prison officials to protect inmates from self-harm. Given there is no indication in the record that Mr. Clark's suicide risk has been seriously evaluated by mental health professionals during the past month when he has repeatedly expressed suicidal ideations, a narrowly tailored preliminary injunction is in the public interest.

In selecting an appropriate remedy, the court recognizes:

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials

5

>have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). The Warden did not explain the least intrusive means of addressing Mr. Clark's suicidal ideations. The court is thus left without argument in selecting a narrowly tailored injunction.

Mr. Clark asks for medication, therapy, evaluations, testing, and transfer to a mental health unit at a different prison. ECF 7 at 9. None of those appear narrowly tailored to address his suicidal ideations. The court will only order the Warden to place Mr. Clark on suicide watch and have him conscientiously evaluated by a mental health professional until a different placement or treatment is recommended. This narrowly tailored injunction allows the Warden to confidently rely on a professional judgment knowing it is current and well-informed. When the Warden receives a professional treatment recommendation, he must notify the court within seventy-two hours, but may authorize the implementation of any recommendation without leave of court. The Warden remains free to reply to his mental health professionals. He remains free to implement their recommendations. Mr. Taylor may receive medication if prescribed. He may receive therapy if prescribed. He may be left on suicide watch or moved off suicide watch as determined by a mental health professional. He may be transferred to a mental health unit at a different prison.

For these reasons, the court:

(1) GRANTS the preliminary injunction motion (ECF 7) to the extent explained below and DENIES the motion (ECF 7) in all other respects;

(2) ORDERS the Warden of the Westville Correctional Facility to immediately place **Justin James Eugene Clark, IDOC # 150094**, on suicide watch;

(3) ORDERS the Warden to have Mr. Clark's suicidal ideations conscientiously evaluated by a mental health professional;

(4) ORDERS the Warden to report to the court within seventy-two hours what treatment recommendations were made by the mental health professional;

(5) ORDERS the Warden to report to the court within seventy-two hours of Mr. Clark's discharge from suicide watch;

(6) ORDERS the Warden to report to the court within seventy-two hours of Mr. Clark's transfer to a different prison;

(7) DIRECTS the clerk to fax or email a copy of this order to the Warden at the Westville Correctional Facility and to the Commissioner of the Indiana Department of Correction at the Central Office;

(8) ORDERS the Warden (or the Acting Warden who receives this notice) to personally provide immediate written confirmation of receipt of this order;

(9) ORDERS the Warden (or the Acting Warden at the time) to personally provide immediate written notification of Mr. Clark's placement on suicide watch; and

(10) DIRECTS the clerk to docket the Warden's confirmations.

SO ORDERED.

August 15, 2022                           *s/ Damon R. Leichty*
                                          Judge, United States District Court